## EDO P. MERSELES *v.* ELIZABETH VREELAND and others.

On the 20th of June, 1849, J. M. V. gave to A. A. V. a mortgage on thirty-five acres of land to secure the payment of his bond for $777.19. In 1839, J. M. V. died, leaving a widow and children, and leaving a will, giving to his widow the use of all his estate, real and personal, during her life or widowhood; and to the children to be divided among them when the youngest should attain twenty-one, and after the widow should have done with the use of it; and, if his personal estate be not sufficient to pay his debts, charging his real estate therewith, and ordering so much thereof to be sold, from time to time, by the executors of his will, as would meet the payment of the debts; and appointing the widow executrix. The widow proved the will, and entered on the administration of the estate. In 1840, on affidavit that the widow had become deranged, administration with the will annexed was granted to one of the children and a brother of the testator; and, on their application, the Orphans' Court ordered the sale of the real estate to pay the debts; and the administrators, thereupon, exposed to sale a part of the land covered by the said mortgage, which was struck off to E. P. M., for $1114.38, on the 8th of February, 1842, and the administrators executed to him a deed therefor, and he entered into possession thereof. E. P. M. paid to the administrators the difference between the amount due on the mortgage and the amount of his said bid; and in 1844, being still in possession, he paid to the mortgagee the amount due on the mortgage, and had the mortgage cancelled of record, in November, 1844. In 1845, the widow brought ejectment against E. P. M., the complainant, for the lands so bought by him at the administrators' sale; and recovered, on the ground that the Surrogate had no right to grant such administration, and obtained possession of the lands. The complainant, E. P. M., then obtained from the mortgagee an assignment of the mortgage. In 1849, the widow brought an action against E. P. M. for the mesne profits. And thereupon, E. P. M. filed his bill, praying, that the mortgage be decreed to be good; and that the widow and children be decreed to pay it; or be foreclosed &c.; or that the mortgaged lands be sold to pay it; and that the money paid by E. P. M., the complainant, on the said sale, over and above the amount due on the mortgage, may be offset against the claim of the widow for the rents and profits; and for an injunction staying the suit for mesne profits.

The injunction was allowed.

On answer and argument, the injunction was dissolved.

*Held:* That, as between the mortgagee and the widow, she was entitled to hold and enjoy the lands, and the rents and profits thereof, until he could get possession in due course.

*Semble:* That as between the widow and children, in such a case, the widow ought to keep down the interest, out of the rents and profits, or proceed promptly to a sale, to pay the mortgage debt.

The bill, filed June 20th, 1849, states, that on the 4th of July, 1835, John M. Vreeland gave his bond, of that date, to

Aaron A. Van Houten, conditioned for the payment of $777.19, in one year, with interest; and, to secure the payment of said bond, the said J. M. Vreeland executed to said Aaron a mortgage, of the same date, on thirty-five acres of land (described in the bill.)

That, in 1840, John M. Vreeland died, leaving a will, and leaving his widow, Elizabeth, and five children, viz., Michael, Caspar, Cornelius, John, and Ann Eliza Vreeland.

That the will directs that all his just debts be paid; gives to his said widow the use of all his estate, both real and personal, during her life or widowhood; gives to his said five children the whole of his estate, to be equally divided among them, when the youngest shall attain twenty-one, and after his said widow shall have done with the use of it. Providing that, in case his personal estate should not be sufficient to pay his debts, then he charges his real estate with the same, and orders so much thereof, from time to time, to be sold, by his executors, as will meet the payment of the same. That the said Elizabeth, the widow, and Nicholas R. Terhune, were appointed executors of the will.

That Terhune renounced the executorship, and that said Elizabeth proved the will, and took upon herself &c., September 21st, 1839.

That said Elizabeth administered part of the estate, and the personal estate being insufficient to pay the debts, and, among the rest, the debt secured by the said bond and mortgage, it became necessary to take some steps to procure a sale of the real estate, or some part thereof, to pay the debts; and the said Elizabeth, the said executrix, having become deranged in her mind, and unfit to manage the said estate, the family thought it advisable that administrators with the will annexed should be appointed, so as to have the estate settled. That Michael and Caspar, two of said children, being of age, and all the rest under age, application was made to the Surrogate of Passaic to grant such administration. That on affidavit made of the situation of said Elizabeth, the Surrogate, on the 20th of May, 1840, granted administration, with the will annexed, to Michael Vreeland, one of said children, and Cornelius M. Vreeland, the brother of the said John M. Vreeland, the said Caspar declining to join in said

administration on account of being involved in his circumstances.

That the said Michael and Cornelius, administrators with the will annexed, proceeded in due course of law to administer the estate; and that, having filed their accounts in the Orphan's Court of Passaic, and there being a deficiency of personal estate, the said Court ordered a sale of the real estate of said J. M. Vreeland to pay his debts. That thereupon the said administrators set up certain parts of the real estate of said J. M. Vreeland, deceased, for sale at public auction according to law; that is to say, a lot, &c., (describing it,) containing 10 29-100 acres; and a lot &c., (describing it,) containing 8 11-100 acres, and which was a part of the land described in said mortgage to A. A. Van Houten; and that, this complainant bidding for the same $1114.38, and no person bidding more, the same was struck off to him for that sum, on the 8th of February, 1842; and the said administrators executed and delivered to him a deed for the said lots; and the complainant thereupon entered on said lands, and continued to occupy the same until he was removed as in the bill after stated.

That said Elizabeth was present at said sale, and did not forbid the same, or make any statement that the said administrators had no right to sell, or that she intended to dispute the title of the purchasers at the sale; nor did she do any act by which the complainant could be put upon his guard, or that should lead the complainant to doubt that a good title could be given by the said administrators and the complainant believed at the time that he purchased a good title.

That, in November, 1844, while complainant was in possession of said property, and no objection being raised to the said sale, by the said Elizabeth or any other person, and after the complainant had paid to the said administrators the difference between the amount due to said A. A. Van Houten on his said bond and mortgage and the amount of the complainant's said bid, the complainant went to said A. A. Van Houten and paid him the amount due on his said mortgage, and took the same up, and tore off the seals from said bond and mortgage, and took said mortgage to the Clerk's office and had it cancelled of record, on the 16th of November, 1844.

That, on the 4th of May, 1842, when said deed was delivered to complainant, by said administrators, there was due said A. A. Van Houten on the said bond and mortgage $745.46; and that the complainant paid the balance of said purchase money to the said administrators, amounting to $368.92; and that the whole of this sum was applied by said administrators to pay the debts of said J. M. Vreeland, deceased, except $100, which, as complainant is informed and believes, was applied by said administrators, or one of them, to pay the funeral expenses of said Michael Vreeland, who died; and the balance, being $61, was paid by said administrators, or one of them, as follows: $15.25 to the said widow, Elizabeth, and the same sum to Cornelius, John and Ann Eliza, to purchase clothing for them.

That said Elizabeth gave no notice of her intention to dispute complainant's title until after complainant had canceled said mortgage on record, when she caused a search to be made of the records of mortgages in the Clerk's office; and finding the same there canceled, and thinking that thereby the debt was extinguished, she brought ejectment against the complainant, to the term of May, 1845, for the recovery of the lands so purchased by the complainant; which suit was pending until April term, 1849, when the Supreme Court decided in favor of said Elizabeth, on the ground, as complainant is informed, that the Surrogate had no right to grant such administration. That said Elizabeth, immediately thereafter, had the costs in said suit taxed, and a writ of possession issued, and obtained the possession of said lands; and the complainant has paid the said costs.

That said A. A. Van Houten has lately executed and delivered to the complainant an assignment of the said mortgage; said assignment purporting to bear date November 16th, 1844.

That, after the death of said J. M. Vreeland, the said Elizabeth accepted the said devises and bequests in said will given to her, in lieu of dower; and that, by such acceptance, all the dower and right of dower of said Elizabeth in the said lands described in said mortgage has been lost; and the complainant is entitled to have the same sold free and clear of the dower of said Elizabeth.

That Michael and Caspar, sons of said J. M. Vreeland, have

died, unmarried, without issue and intestate; and thereby all their right &c. has descended to the said Cornelius, John and Ann Eliza Vreeland, who are all of the age of twenty-one. That said Michael and Caspar, in their lifetime, did not convey any of the land described in said mortgage, except that they, together with one Cornelius M. Vreeland, as the complainant has heard and believes, conveyed their interest in a part of the lands described in said mortgage, to one Daniel A. Vreeland, on the 23d of May, 1840, containing 7 4-100 acres.

That the right of said Elizabeth and of her children under said will in and to the real estate was by said will expressly charged with the payment of the debts of said J. M. Vreeland; and that the personal estate of J. M. Vreeland was wholly insufficient to pay his debts.

That said Elizabeth has lately commenced an action in the Circuit Court of Passaic, of trespass, returnable June term, 1849, for the recovery of the mesne profits of the land so purchased by complainant, (recovered in said ejectment,) and has laid her damages at $1800. And the complainant charges, that the said $368.92, paid by him upon said sale, over and above the amount due on said mortgage at the time of said sale, and appropriated to pay the debts of said J. M. Vreeland, and to the support of his children, and paid to said Elizabeth as before stated, with the interest thereon, ought to be applied as an offset to the use of said land by the complainant, and that an account should be taken of the same; and that, if the rents and profits should amount to more than this sum with interest, then that the complainant, as mortgagee in possession, should be charged with such excess, and the same should be deducted from the interest due and to grow due on said mortgage.

That the money secured by said bond and mortgage has not been paid by said Elizabeth or by any other person; but that the same, together with the said $369.92 so paid by complainant, is now due and owing to the complainant, with large arrears of interest.

That, said bond and mortgage not having been paid, the complainant's estate in the mortgaged premises has become absolute,

and the complainant entitled to have the equity of redemption foreclosed, or the said mortgaged premises sold, &c.

That said Elizabeth having stood by and seen said land sold, for the payment of the debts of said J. M. Vreeland without forbidding said sale, and permitting the complainant to purchase and quietly to enjoy the possession of said land until the complainant canceled said mortgage, was a fraud on the complainant; and complainant charges, that by reason thereof, the said bond and mortgage ought in this Court to be held binding, and the money paid by complainant upon the said sale over and above the amount due on said mortgage ought to be offset against the claim for rents and profits of said land.

Complainant states, that while he so had possession of said land, he greatly improved the same; and claims that such improvements ought to be allowed to him against the said rents and profits.

The bill prays that the said bond and mortgage may be decreed to be good, and the cancellation thereof be considered null; and that said Elizabeth Vreeland, Cornelius Vreeland, John Vreeland, Ann Eliza Vreeland, and Daniel A. Vreeland, or one of them, be decreed to pay to the complainant the amount of said mortgage, with interest and the complainant's costs, both at law and in equity; or that they may be foreclosed of and from all equity of redemption &c., and be decreed to deliver up possession of said mortgaged premises to the complainant; or that said mortgaged premises may be decreed to be sold, to pay the complainant his said debt and interest; and that it may be decreed that the money paid by the complainant on the said sale, over and above the amount due on said mortgage, shall be paid to the complainant by the defendants, or one of them, or that the same shall be offset against the claim of said Elizabeth Vreeland for the rents and profits of said property. And that said Elizabeth may be injoined from further proceeding on said suit for mesne profits; and for such other and further relief &c.

Elizabeth Vreeland, in her own right and as executrix of the will of J. M. Vreeland, deceased, Cornelius Vreeland, John Vreeland, Ann Eliza Vreeland, and Daniel A. Vreeland are made defendants.

On the reading of this bill an injunction restraining said suit for mesne profits was granted.

The joint and several answer of Elizabeth Vreeland, in her own right and as executrix aforesaid, Cornelius Vreeland, John Vreeland, and Ann Eliza Vreeland, was put in on the 19th of December, 1849.

They admit the bond and mortgage from J. M. Vreeland, deceased, to A. A. Van Houten, as stated in this bill; and the death, and the will of J. M. Vreeland as stated in the bill; the renunciation of Terhune, one of the executors named in said will, and the probate thereof by the said Elizabeth Vreeland.

The defendant Elizabeth Vreeland, answering for herself, the other defendants saying they believe it to be true, saith, that after proving the will she began to administer the estate, and took possession of the real and personal estate, the use of which was bequeathed to her during her life or widowhood, she being still the widow of her testator; that she filed an inventory of the goods and chattels, September 20th, 1839, which inventory amounted to $1248.92 1-2, including debts due said estate, amounting to $347.30, as by said inventory filed &c., appears; that she continued to administer said estate, paying debts to divers creditors of the estate; and to A. A. Van Houten $93.26 on the bond and mortgage mentioned in the bill; until about May 20th, 1840, when an application was made to the Surrogate of Passaic to grant admistration with the will annexed to Michael Vreeland, one of the sons of said testator, and Cornelius M. Vreeland, the brother of the testator, on the ground that the defendant Elizabeth had "from mental incapacity become unable to attend to the management and settlement of the said estate of the testator;" and that thereupon the Surrogate of Passaic did, unlawfully as she has been advised, grant administration with the will of said testator annexed to the said Michael and Cornelius; who took upon themselves &c., and unlawfully deprived her of the administration thereof, and took from her all the control and management of the same, to suit their own private views and purposes.

She denies that when said administration was granted, or at

any other time, she was deranged in her mind and unfit to manage said estate; and avers that she was competent so to do, and that the whole proceedings in regard to changing the administration of said estate were effected without her concurrence and consent, and against her will and wish; and that no notice whatever was given to her of the said application; and that every thing in relation thereto was done without her knowledge.

The defendants admit that, when said administration was granted to said Michael and Cornelius M., two of the children of the said testator, viz., Michael and Caspar, were of age, and that all the rest, viz., Cornelius, John and Ann Eliza, were under age; but whether the said Caspar declined &c., (as stated in the bill,) or whether the family, as stated in the bill, thought it advisable that administration with the will annexed should be granted, the defendants know not and cannot form any belief, nor of whom that family consisted.

The defendants admit that said Michael and Cornelius M., administrators as aforesaid, proceeded to administer said estate; but they deny that it was done in due course of law; and that they filed an account in the Orphans' Court of Passaic; and that said Court ordered a sale of the real estate of said J. M. Vreeland, deceased, to pay his debts; but they aver that there was a sufficiency of his personal estate to pay all his debts, independent of the debt due said A. A. Van Houten, secured by said bond and mortgage, and which the said A. A. Van Houten was willing should lay, he not being in want of the money, and saying so to the said Elizabeth, executrix as aforesaid; and that he did not request of the said administrators the payment of the same, but that they called upon him and obtained from him a statement of the amount due on the same.

And the said Elizabeth, answering for herself, the other defendants saying they believe it to be true, saith, that she would have been able to pay all the debts due from the estate of said testator from his personal estate in her hands as executrix, except the said mortgage debt to A. A. Van Houten; and that she fully intended so to do, but was prevented from so doing by the granting of administration to said Michael and Cornelius M., as aforesaid; who, thereupon, took the administration of the es-

tate out of her hands, and proceeded, unlawfully, to administer the same.

The defendants admit that the Orphans' Court of Passaic ordered a sale of the real estate of said testator, to pay his debts, but unlawfully, as they are advised; and that, thereupon, the said administrators with the will annexed set up certain parts of the real estate for sale at public auction, which are particularly described in the bill; and that the same was struck off to the complainant for the sum mentioned in the bill; and that said administrators executed to the complainant a deed for the same; and that the complainant thereupon entered on the same, and continued to occupy the same for a long space of time, and until he was evicted thereupon by due course of law, as in the answer after stated.

The said Elizabeth, answering for herself, the other defendants saying they believe it to be true, saith, that she was in and about her house when the persons assembled to attend said sale and before the sale commenced; but that she was not present when said land was put up for sale or when it was struck off to the complainant; and she avers that she was opposed to said sale, and objected to it, and did not concur in it, or give her assent thereto, although she might not publicly have prohibited the said sale nor made a statement that said administrators had no right to sell or that she intended to dispute the title of the purchasers at the sale. But the defendants submit, that said administrators had no legal right to sell said property, and that all their proceedings in said premises were unlawful and void.

The defendants admit that after said sale, but whether before or after he had taken possession of the land sold the defendants know not, the complainant went to said A. A. Van Houten and paid him the amount due on his said mortgage, and tore off the seals from the bond and mortgage, and took the mortgage to the Clerk's office and had it canceled of record, on the day stated in the bill. And they submit, that the cancellation of said mortgage of record is an absolute bar and discharge thereof; and that the complainant is not entitled to come into this Court and ask any decree thereon.

The defendants admit that, on the day stated in the bill, there

was due to said A. A. Van Houten, on his said bond and mortgage, $745.46, and that the complainant paid the balance of the purchase money to the said administrators, amounting to $368.92; but how the said administrators applied the same these defendants are ignorant, except that they paid to these defendants, or for their benefit, $15.25 each, and have, as the defendants are informed, paid off some of the debts of said testator ; but to what extent the defendants cannot say.

They admit the ejectment by said Elizabeth, and that the Supreme Court decided in her favor, on the ground, as they are advised and believe, that the Surrogate had no right to grant such letters of administration. They admit the writ of possession, and that said Elizabeth obtained possession ; and that complainant paid the costs of the ejectment.

They deny that the complainant, while he so had possession, made any improvements, except such as were necessary for the cultivation of the land in the ordinary course of husbandry.

They admit that A. A. Van Houten, lately, and long after the cancellation of the mortgage, and not until after said Elizabeth had obtained possession of the said lands, as the defendants aver, executed to the complainant his deed of assignment, purporting to bear date November 16th, 1844, by which he assigned said bond and mortgage to the complainant ; but they submit that the said assignment is of no effect or avail, either at law or in equity.

They admit that, after the death of said J. M. Vreeland, the said Elizabeth accepted the devises and bequests to her in said will ; but whether by such acceptance all the dower and right of dower of said Elizabeth in and to said land described in said mortgage has been lost, the said Elizabeth submits, if necessary, to the decision of this Court.

They admit the death of Michael and Caspar, and the descent, as stated in bill ; and that the surviving children are of age.

They admit that said Michael and Caspar, in their lifetime, did not convey any of the land described in said mortgage, except that they, together with said Cornelius M. Vreeland, conveyed their interest in a part of the lands described in said

mortgage to one Daniel A. Vreeland, on or about May 23d, 1840, containing 7 4-100 acres.

They admit that the real estate was by said will charged with the payment of the debts of said J. M. Vreeland; but only in case his personal estate should not be sufficient to pay the same; and that he ordered, by his said will, so much thereof from time to time to be sold by his said executors as would meet the payment of the same. And they aver that there was a sufficiency of the personal estate to pay all the debts except the said mortgage debt to A. A. Van Houten, and that said A. A. Van Houten was willing that the same should lie; not wanting the principal thereof.

She admits the action for mesne profits brought by said Elizabeth; but the said Elizabeth submits, that the said $368.92, or any other sum paid by complainant upon said pretended sale, over and above the amount due on said mortgage at any time thereof, and appropriated, as is alleged in said bill, to pay the debts of said J. M. Vreeland, and to the support of his children and of said Elizabeth, as above stated, ought not to be applied as an offset to the use of said land so occupied by complainant; and that no allowance of the said rents and profits of said land should be made to the complainant therefor, he having paid the said $368.92 to the administrators in his own wrong, and without the consent, concurrence or knowledge of the said Elizabeth.

The defendants submit, that the complainant is not entitled to have the equity of redemption in said mortgaged premises foreclosed, nor to have the premises sold for the payment of the money mentioned in said mortgage, or any part thereof.

And the said Elizabeth submits, that the injunction granted should be dissolved.

On this answer a motion was made to dissolve the injunction.

*Hopper* and *Zabriskie* in support of the motion. They cited 2 *John. Ch.* 60; *Saxton's Ch.* 205; 6 *John. Ch.* 170; 1 *Green's Ch.* 117, 125, 145; 1 *Peters*, 13, 17; 1 *Story's Eq.* p. 153; *Ib.* sec. 137, note; 14 *Pick.* 98; 2 *Kent's Com.* 491;

*Saxt Ch.* 100, 111; 2 *Green's Ch.* 513; 3 *Hill's Rep.* 219; 2 *Greenl. Evid.* 337; 4 *Cowen,* 168; *Zab.* 643.

*A. S. Pennington* contra. He cited *Drury on Inj.* 8, 35.

THE CHANCELLOR. If, under the circumstances of this case, the mortgage should be considered as still existing, in favor of Edo P. Merselis, the complainant, (which is the main question to be decided on the hearing of the cause on the merits, after the proofs shall be taken), and I am not now sufficiently clear that it should not be so considered to authorize my acting, in reference to the question now before me, on the assumption that it cannot be so considered, one of two courses must be taken, in considering whether the injunction should be dissolved. Assuming, for the present, and for the purposes of this motion, that the mortgage may finally be held to be still subsisting, in favor of the complainant, one course is to dissolve the injunction and permit the widow to recover, from Edo P. Merselis, her judgment for the rents and profits, and to collect them from him by execution, and thus leave Merselisas, holder of the mortgage, to recover a decree for the principal and all the interest that may have accrued on the mortgage, and to sell so much of the mortgaged premises as will be required *to pay the amount of such principal and interest.* The other course is, to consider that the widow, she being also executrix, should, under the will, pay the interest on the mortgage debt out of the rents and profits of the lands, so long as she holds them and takes rents and profits, and does not subject them or any part of them to sale for the payment of the mortgage debt; it being admitted that the personal estate was not sufficient, after paying the other debts, to pay the mortgage debt or any part of it.

It appears to me, that when a testator gives the use of all his estate, real and personal, to his widow during her life and widowhood, and, in case his personal estate be not sufficient to pay his debts, charges his real estate with the same, and orders so much thereof to be sold, from time to time, by his executors, as will meet the payment of the same, and appoints his widow the execu-

trix of the will; and there is a mortgage debt which, or any part of which, by the admission of the widow, the personal estate is not sufficient to pay; and the personal estate has been exhausted in the payment of other debts; in such case it seems to me to be the duty of the widow and executrix, either to keep down the interest of the mortgage debt out of the rents and profits of the real estate, or to proceed promptly to the sale of so much of the real estate as will be sufficient to pay the mortgage debt. It would do great injustice to the remainder men to permit her to delay the sale of sufficient land to pay the mortgage debt as long as she could induce the mortgagee, in view of the abundant landed security he might have, to defer foreclosing his mortgage; she, in the mean time, reaping and appropriating to her own use the whole of the rents and profits, and permitting the interest to accumulate against the remainder men, the children of the testator in this case, to an amount perhaps that would swallow up the whole of the mortgaged lands at her death.

As between the widow and the children, in this case, on a bill filed by the children, the widow ought to keep down the interest out of the rents and profits of the land, or proceed promptly to a sale.

But in this case I do not perceive that the Court can proceed on this ground, or with a view to such relief. The children, here, are parties defendants with the widow, and the bill prays for no such relief. The complainant, by the shape of his bill, is willing to stand on the ground that the mortgaged premises are sufficient to pay the amount of principal and interest that will be due on the mortgage, at the time when the same may be sold under the mortgage and a decree for sale founded thereon; and it does not appear that the children will ever seek any such relief against the widow as that she pay the interest out of the rents and profits.

In reference to the matter of interest on the mortgage debt, therefore, and to the idea of setting off the interest accrued on the mortgage against the rents and profits sought to be recovered from Edo P. Merselis, in the action for mesne profits which was injoined, for and during the time he occupied the lands, there does

not seem to be good reason for continuing the injunction restraining that action. As between the mortgagee and the widow, she was entitled to hold and enjoy the lands, and the rents and profits thereof, until he could get possession of the lands in due course. And if, as between the widow and the mortgagee, or Merselis, (he is to stand in the place of the mortgagee,) Merselis considers, as it appears by his bill he does, and as I suppose is true, that the mortgaged lands are abundantly sufficient to pay the mortgage and interest; then there seems to be no good reason why the widow should not be permitted to go on and recover the rents and profits received by Merselis, while he was in possession of the lands under the deed which the Supreme Court have declared to have been void. The Court before which the action for mesne profits will be tried will protect him in all his rights as to the amount to be recovered against him.

Injunction dissolved.